UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIO DONTEZ WRIGHT,

       Petitioner,

v.                                     Case No. 17-cv-13211

CARMEN D. PALMER,             HON. MARK A. GOLDSMITH

       Respondent.
_____/

## OPINION & ORDER
## DENYING THE HABEAS CORPUS PETITION,
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
## AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

Petitioner Dario Dontez Wright, a state prisoner currently confined at the Oaks Correctional Facility in Manistee, Michigan,[1] filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). The petition challenges Wright's convictions for voluntary manslaughter, Mich. Comp. Laws § 750.321, second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b. Pet. for Writ of Habeas Corpus at PageID.3 (Dkt. 1). Wright alleges as grounds for relief that he was denied his right to effective assistance of counsel because his defense attorney (1) failed to file a motion to suppress portions of Wright's recorded statement, which involved discussions between

---

[1] Although Wright indicated in his habeas petition that he was incarcerated at the Michigan Reformatory in Ionia, Michigan (Pet., ECF No. 1, PageID.1, 9), the Court's last mailing to him was returned as undeliverable. See ECF No. 13. Public records maintained by the Michigan Department of Corrections indicate that Wright is confined at the Oaks Correctional Facility, 1500 Caberfae Highway, Manistee, Michigan 49660. See mdocweb.state.mi.us/OTIS2/otis2.aspx (last visited August 21, 2020). Search by name or inmate number (622750).

him and his pretrial attorney, and (2) decided to waive his right to a jury trial without his consent. Id. at PageID.5.  The State urges the Court to deny the petition because neither Wright's pretrial attorney, nor his trial attorney, was ineffective, and because the state appellate court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Answer in Opp'n to Pet. for Writ of Habeas Corpus at PageID.23-24 (Dkt. 7).  For reasons stated below, the Court denies the petition for writ of habeas corpus and declines to issue a certificate of appealability, but grants leave to appeal in forma pauperis.

## II.  THE FACTS AND PROCEDURAL HISTORY

Wright was charged in Wayne County, Michigan with two counts of first-degree, premeditated murder, one count of felon in possession of a firearm, and one count of felony firearm.  He was tried before a judge in Wayne County Circuit Court.  The Michigan Court of Appeals correctly summarized the evidence at Wright's bench trial as follows:

> In December 2013, Gyuana Peterson lived with her grandmother and her grandmother's boyfriend, Wright.  Because she was angry with her grandmother, Peterson arranged to have the home burglarized.  In the morning, Peterson stole multiple guns and brought them to the home of Fallon Green and Antoine Crumby. At around noon that same day, she returned to her grandmother's home with Green. She asked Wright to help her pick out a part for her car so the house would be empty for Crumby to burglarize.  Wright agreed to help her and they left.  Crumby broke into the home and stole two televisions, a coat, and a duffel bag.  Crumby brought the items back to his home where he met Green and Peterson.
>
> Later that evening, Wright called Peterson and told her that he knew she was involved in the burglary.  He stated that she should come to the house to kiss her grandmother goodbye because he was going to kill her.  Peterson eventually returned to the home accompanied by a police officer so she could remove some personal possessions.  The officer advised Peterson not to return to the home that night.  Nevertheless, Peterson returned later that night with Green, Crumby, and Green's cousin Curtis Smith, in order to retrieve her furniture.
>
> After they arrived, Wright came out of the home and asked who was involved in the burglary.  Wright went back in the home and returned with a long gun and two other armed men.  Wright patted down Smith, at which point Smith slapped his hand away.  Immediately after this, Wright turned towards Crumby and shot him

2

in the head. As Smith began to flee, Wright turned and shot him in the back. Wright then shot both men a second time. He was later seen driving away with Peterson's grandmother and the two other men.

People v. Wright, No. 323682, 2016 WL 901493, at *1 (Mich. Ct. App. Mar. 8, 2016) (unpublished).

Wright did not testify, but in a statement to the police, he said that he had tussled over a rifle with a man at a car in the driveway and that several shots had gone off. He claimed that he was trying to save his life at the time. See RM 514 CAM 2 2014-01-02 at 10:41 p.m.–10:51 p.m. (filed in the traditional manner pursuant to Dkt. 10).

At trial, Wright presented two witnesses: Lorraine Hayden, who was Wright's live-in girlfriend and Peterson's grandmother, and Channing Wingo (sometimes called "C.J."), who was a friend of Wright and of Wright's brother. Hayden testified that Wright was not home before the shooting, when she went to sleep, or after the shooting when she left the house with Wingo and Wright's brother Curtis. 6/2/14 Trial Tr. at PageID.616-620 (Dkt. 8-8).

Wingo testified that he was sitting in Wright and Hayden's living room before the shooting and while Hayden was sleeping. He heard Peterson make a comment, and when he looked out the window, he saw Wright approach the house, put his hands on a young man, and struggle over a long gun. A shot went off, hitting Wingo in the arm. He heard five to ten more shots, and they all sounded like they came from the same long gun. He and Lorraine then left the house and went to his mother's house. They met Wright's brother on the way. Wright subsequently arrived at Wingo's mother's house, but there was no conversation about what had transpired. Id. at PageID.671-676, 688-708.

Wright's defense was that Peterson and Green were not believable and that his statement to the police about the gun going off during a struggle was credible. He also maintained that the

3

prosecution had failed to show premeditation and deliberation on the first-degree murder charge, and he agreed that the trial court could instruct itself on lesser offenses, including manslaughter. 6/27/14 Trial Tr. at PageID.738, 748 (Dkt. 8-9).

At the conclusion of the bench trial, the trial court acquitted Wright of the two counts of first-degree murder, but it found him guilty of voluntary manslaughter for the shooting of Crumby, second-degree murder for the shooting of Smith, one count of felon in possession of a firearm, and one count of felony firearm. On July 16, 2014, the trial court sentenced Wright to four to fifteen years in prison for the manslaughter conviction, a concurrent term of twenty-five to fifty years for the murder conviction, time served for the felon-in-possession conviction, and a consecutive term of two years in prison for the felony-firearm conviction.

Wright raised his habeas claims in an appeal by right, but the Michigan Court of Appeals affirmed his convictions in a per curiam opinion because "Wright [had] not established any error warranting a new trial." Wright, 2016 WL 901493, at *4. Wright raised the same issues in the Michigan Supreme Court, which denied leave to appeal on September 27, 2016, because it was not persuaded to review the questions presented to the court. People v. Wright, 885 N.W.2d 287 (Mich. 2016).

Wright subsequently filed his habeas corpus petition. Because he did not file a supporting brief, the Court has looked to his state-appellate brief for a greater understanding of his claims.

### III. STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

4

> was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (internal and end citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652,

664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to "§ 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103. Finally, a state court's factual findings are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts the presumption with clear and convincing evidence.

### IV. DISCUSSION

Both of Wright's claims allege ineffective assistance of counsel. To prevail on these claims, Wright must show that his "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Wright "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Wright must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

"The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Harrington, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### A. Wright's Recorded Conversation with his Former Attorney

Wright alleges first that his pretrial attorney, Delicia A. Cain-Taylor Coleman, was ineffective because she conducted a conversation with him while the two of them were being recorded. Defendant/Appellant's Br. on Appeal at PageID.857-858 (Dkt. 8-11). Wright further alleges that his trial attorney, Susan Reed, was ineffective because she failed to suppress evidence of the conversation. Id. at PageID.858. Wright argues that his conversation with Coleman was protected by the attorney-client privilege and, therefore, it was inadmissible at trial. Id. at PageID.858, 861.

This claim arose during Wright's statement to a police officer in a room equipped with a video and audio recording system. Coleman was present during the interrogation, and when the interrogating officer left the room, Wright and Coleman discussed the facts of the case while their discussion was being recorded. According to Wright, their discussion concerned what he had said and how he could alter his statement to make his version of the facts appear more believable. Id. at PageID.858. Wright further alleges that the discussion allowed the finder of fact to see that he was changing his version of events at the behest of his lawyer. Id. at PageID.863. Wright's entire videotaped statement, including his conversation with Coleman, was played during his trial. See 5/29/14 Trial Tr. at PageID.563-564 (Dkt. 8-7); 6/2/14 Trial Tr., PageID.574-575 (Dkt. 8-8).

7

### 1. Coleman's Failure to Ensure that her Discussion with Wright was Confidential

Wright contends that Coleman should have known that communications between an attorney and the client are sacred, and she should have taken steps to ensure that her discussions with Wright stayed privileged and were not recorded. Defendant/Appellant's Br. on Appeal at PageID.863-864. "The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client." In re Grand Jury Subpoena, 886 F.2d 135, 137 (6th Cir. 1989) (quotation marks and end citations omitted). "The privilege exists to allow a client to confide in the attorney and be safe in the knowledge that the communication will not be disclosed." People v. Compeau, 625 N.W.2d 120, 122 (Mich. Ct. App. 2001).

Coleman twice spoke to Wright after the interrogating officer left the interview room and while their conversations were being recorded. See RM 514 CAM 2 2014-01-02 at 11:20–11:22 p.m. and 11:33–11:34 p.m. Wright contends that Coleman should have asked the officer to stop the recording before he left the room because his conversations with Coleman allowed the trier of fact to conclude that he was changing his version of events at the behest of his lawyer. Defendant/Appellant's Br. on Appeal at PageID.863.

The Michigan Court of Appeals agreed that Coleman should have avoided engaging in a privileged conversation with Wright, and that Coleman's decision to engage in a potentially incriminating conversation with Wright while clearly under surveillance fell below an objective standard of reasonableness. Wright, 2016 WL 901493, at *2. The Court of Appeals pointed out that, even though an officer informed Coleman that she and Wright were being recorded before the officer left the room, Coleman elected to discuss with Wright how he should present his version of events. Id. The Court of Appeals stated that the recorded conversation gave rise to the inference

that Wright was not being entirely truthful and that there was no conceivable strategic reason for proceeding in that manner. Id. The Court of Appeals, nevertheless, concluded that Coleman's deficient performance did not prejudice Wright's trial because "[t]he trial court's findings demonstrate that the conversation between Wright and Coleman did not influence its decision." Id. at *3.

Applying AEDPA's highly deferential standard, the Court cannot find that the Court of Appeals was unreasonable in reaching its conclusion that there is not a reasonable probability that, but for the admission of their conversation into evidence, the result of the proceeding would have been different. Although the trial court did say that Wright's comments to his attorney were inconsistent with what he said to the police, 6/27/14 Trial Tr. at PageID.739 (Dkt. 8-9), the court appeared more concerned with the trial testimony and physical evidence in the case. The court noted that Smith had been shot in the back and that both victims had been shot multiple times, id. at PageID.739-740; Wright's own witness (Wingo) testified that he heard five to ten shots from the same long gun, id. at PageID.742-743; there was no evidence of close-range firing, id. at PageID.762; and the casings were consistent with a long gun, not one of the handguns that the victims supposedly possessed at the time, id. at PageID.763.

Given the strength of the evidence against Wright and the facts emphasized by the trial court, it does not appear that the recorded conversation between Wright and Coleman influenced the trial court's verdict. Therefore, even if Coleman's performance was deficient, the allegedly deficient performance did not prejudice the defense. Because the state appellate court's decision on Wright's ineffective-assistance-of-counsel claim was objectively reasonable, he is not entitled to relief on his claim about Coleman.

## 2. Reed's Alleged Failure to Move to Suppress the Recorded Conversation

Wright contends that his trial attorney, Reed, was ineffective because she failed to object to the admission of Wright's recorded conversation with Coleman. Wright contends that the evidence damaged his credibility, which was important because his defense was that he had acted in self-defense. Defendant/Appellant's Br. on Appeal at PageID.861, 863.

Wright overlooks the fact that even though Reed initially did not object to the admission of the Wright's videotaped statement, 5/29/14 Trial Tr. at PageID.562 (Dkt 8-7), she subsequently moved to suppress the entire statement, 6/2/14 Trial Tr. at PageID.570 (Dkt. 8-8). Moreover, the Michigan Court of Appeals determined on review of Wright's claim that, under state law, a communication is not privileged if it lacks confidentiality. Wright, 2016 WL 901493, at *3 (citing Compeau, 625 N.W.2d 120).[2] As the Michigan Court of Appeals explained in Compeau, 625 N.W.2d at 122, the element of confidentiality is lacking when a defendant fails to take reasonable precautions to keep his remarks confidential and chooses to communicate with counsel in a manner that can be overheard by a third person.

The Michigan Court of Appeals stated that the conversation between Wright and Coleman lacked confidentiality because they chose to communicate about how Wright would present his version of the events to the officers, even though they both knew that they were under video surveillance. Wright, 2016 WL 901493, at *3; see also RM 514 CAM 2 2014-01-02 at 10:22–10:23 p.m. (the interrogating officer's comment that the interview room was video- and voice-recorded, and Coleman's additional remark to Wright that everything could be seen and heard). The Court of Appeals concluded that, because the element of confidentiality was missing, the

---

[2] Similarly, under federal law, if a communication between an attorney and his or her client is not confidential, it is not privileged. See In re Grand Jury Subpoena, 886 F.2d 135, 139 (6th Cir. 1989).

attorney/client privilege did not apply, and Reed was not ineffective for failing to object on that basis. Wright, 2016 WL 901493, at *3.

The state court's interpretation of state law binds this Court sitting in habeas corpus review, Bradshaw v. Richey, 546 U.S. 74, 76 (2005), and because the state court determined that the attorney/client privilege was not implicated due to a lack of confidentiality, Reed was not ineffective for failing to object to the admission of Wright's conversation with Coleman. An objection would have been futile or meritless, and "the failure to make futile objections does not constitute ineffective assistance." Altman v. Winn, 644 F. App'x 637, 644 (6th Cir. 2016). Likewise, "[t]he failure to raise a meritless claim does not constitute ineffective assistance of counsel." Tackett v. Trierweiler, 956 F.3d 358, 375 (6th Cir. 2020).

Further, the state appellate court's determination—that Reed's performance did not fall below an objective standard of reasonableness—was objectively reasonable. Habeas relief, therefore, is not warranted on Wright's claim about Reed's alleged failure to move to suppress or to redact evidence of Wright's conversation with Coleman.

**B. Waiver of the Right to a Jury Trial**

Wright's remaining claim is that Reed was ineffective for waiving his right to a jury trial without his consent. Pet. for Writ of Habeas Corpus at PageID.5. Wright states that he informed Reed that he wished to have a jury trial, but she pressured him to request a bench trial; and when he asked Reed to speak with his family about the issue, she did not follow through on her promise to consult his family. Defendant/Appellant's Br. on Appeal at PageID.868. Instead, according to Wright, Reed falsely informed him that his family agreed he should choose a bench trial, rather than a jury trial. Id. at PageID.868-869. Wright maintains that his waiver of the right to a jury trial was influenced by Reed's false statements to him and her coercion. Id. at PageID.869. The

11

Michigan Court of Appeals adjudicated this claim on the merits and concluded that Wright had failed to demonstrate his lawyer provided ineffective assistance regarding the decision to waive a jury trial. Wright, 2016 WL 901493, at *4. A defense attorney "undoubtedly has a duty to discuss potential strategies with the defendant," and "to consult with the client regarding 'important decisions . . . .'" Fla. v. Nixon, 543 U.S. 175, 178, 187 (2004). But "the accused has the ultimate authority to make certain fundamental decisions regarding the case," including whether to waive a jury. Jones v. Barnes, 463 U.S. 745, 751 (1983). "Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action." Nixon, 543 U.S. at 187. Furthermore, "[b]ecause the right to a jury trial is fundamental, a waiver of that right must be voluntary, knowing, and intelligent. . . . A petitioner bears the burden of proving that his waiver was not, in fact, voluntary, knowing, and intelligent." Otte v. Houk, 654 F.3d 594, 600-01 (6th Cir. 2011) (internal citations omitted).

Wright admits that his attorney consulted him about whether to waive a jury trial, and before his trial commenced, the trial court informed him that he had an absolute right to have his case heard by a jury. 5/27/14 Trial Tr. at PageID.158 (Dkt. 8-5). Wright then assured the trial court that he had no objection to waiving his right to a jury trial and that he understood his decision meant that the court would be the trier of fact. Id. at PageID.159. He also stated that nobody had promised him, forced him, or otherwise made him waive his right to a jury trial and that he was waiving his right to a jury trial of his own free will. Id. Wright's colloquy with the trial court supports the trial court's conclusion that Wright's waiver was knowing, voluntary, and intelligent.

Although Wright contends that he subsequently learned that Reed did not consult his family and that his family did not want him to have a bench trial, the only support for his contention that Reed deceived him is his unsigned affidavit. See Aff. of Dario Dontez Wright at PageID.832-833

12

(Dkt. 8-11). In the absence of any other evidence supporting the contention that Reed deceived Wright into waiving his right to a jury trial, the Michigan Court of Appeals reasonably concluded that Reed was not ineffective.

Reed satisfied Strickland's deferential standard, and the state appellate court's decision—that Wright did not demonstrate ineffective assistance of counsel—is objectively reasonable and entitled to deference under AEDPA. Accordingly, the Court declines to grant relief on Wright's claim regarding his attorney's advice to waive a jury trial.

## V. CERTIFICATES OF APPEALABILITY AND PROCEEDING IN FORMA PAUPERIS ON APPEAL

Wright may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not debate the Court's assessment of Wright's claims, nor conclude that the issues presented deserve encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability. The Court, nevertheless, will allow Wright to proceed in forma pauperis on appeal, because the Court granted him permission to proceed in forma pauperis in this Court (Dkt. 3), and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## VI. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus (Dkt.1), declines to issue a certificate of appealability, and grants leave to appeal in forma pauperis.

SO ORDERED.

Dated: September 28, 2020         s/Mark A. Goldsmith
     Detroit, Michigan              MARK A. GOLDSMITH
                                            United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 28, 2020.

                                           s/Karri Sandusky
                                           Case Manager